JM:IJ/JPN
F.#2007R00237

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ MAR 11 2010 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

ZEV SALTSMAN,

        Defendant.

- - - - - - - - - - - - - - - - X

S U P E R S E D I N G
I N F O R M A T I O N

Cr. No. 07-641 (S-3) (NGG)
(T. 15, U.S.C., §§ 78j(b)
and 78(ff), T. 18,
U.S.C., §§ 2, 981(a)(1)(C)
and 3551 et seq.; T. 21,
U.S.C., § 853; T. 28,
U.S.C., § 2461(c))

THE UNITED STATES ATTORNEY CHARGES:

### INTRODUCTION

At all times relevant to this Information, unless otherwise indicted:

#### The Defendant

1. In and about and between November 2004 to December 2004, the defendant ZEV SALTSMAN and his partner ("Investor #1"), whose identity is known to the United States Attorney, invested money in Xybernaut Corporation ("Xybernaut").

#### The Company

2. Xybernaut was a corporation organized under the laws of the state of Delaware, and its common stock traded publicly on the National Association of Securities Dealers Automated Quotation System SmallCap Market. Xybernaut maintained its headquarters in Fairfax, Virginia and had shareholders throughout the United States, including in the Eastern District

of New York.  Xybernaut's business included the development and distribution of portable computer hardware.

The Fraudulent Scheme

3.   In or about and between **November 2004** and April 2005, both dates being approximate and inclusive, the defendant ZEV SALTSMAN, together with others, engaged in a scheme to defraud Xybernaut shareholders.

4.   In or about November 2004, the defendant ZEV SALTSMAN and Investor #1 invested $8.5 million in Xybernaut common stock and warrants.  SALTSMAN and Investor #1 negotiated the terms of the investment with two members of Xybernaut's board of directors, John Doe #1 and John Doe #2, whose identities are known to the United States Attorney.  Among other things, SALTSMAN and Investor #1 agreed to invest $8.5 million, less 3.5% (the "3.5% Discount"), in exchange for the issuance of 9,167,386 shares of Xybernaut's common stock and 4,583,693 warrants of Xybernaut.  As part of the agreement, SALTSMAN and Investor #1 agreed to receive the shares of common stock at a price representing a 20% discount to the average closing price for Xybernaut's stock for a ten day period, ending December 7, 2004.

5.   John Doe #1 and John Doe #2 agreed, on behalf of Xybernaut, to file a registration statement with the United States Securities and Exchange Commission ("SEC") for the common stock and warrants so that the defendant ZEV SALTSMAN and

3

Investor #1 could sell these securities without any restrictions.

6. The defendant ZEV SALTSMAN and Investor #1 agreed with John Doe #1 and John Doe #2 to hide the 3.5% Discount, because they believed that its public disclosure would cause the price of Xybernaut's stock to fall.

7. The defendant ZEV SALTSMAN, Investor #1, John Doe #1 and John Doe #2 agreed to conceal the 3.5% Discount from other officers and directors of Xybernaut by falsely referring to it as a finder's fee to create the false appearance that 3.5% of the $8.5 million investment was to be paid to a third party as compensation for brokering the transaction and introducing SALTSMAN and Investor #1 to Xybernaut, John Doe #1 and John Doe #2.

8. As part of the scheme, John Doe #1 and John Doe #2 agreed to create a false finder's fee agreement. The defendant ZEV SALTSMAN and Investor #1 agreed to create a shell entity to serve as the apparent finder in connection with the investment of $8.5 million.

9. The defendant ZEV SALTSMAN and Investor #1 agreed to make their investment in Xybernaut through two entities that they controlled, Polar Properties Ltd. and Western Ventures Ltd.

<u>The Execution of the Fraudulent Scheme</u>

10. On or about November 24, 2004, the defendant ZEV SALTSMAN caused the transfer of approximately $5 million from an

4

escrow account under his control to a bank account for the benefit of Xybernaut. In exchange for this investment of $5 million, John Doe #1 and John Doe #2 agreed to issue 5,392,580 Xybernaut shares and a total of 5,392,580 Xybernaut warrants to SALTSMAN and Investor #1 on behalf of Xybernaut.

11. On or about December 23, 2004, the defendant ZEV SALTSMAN caused the transfer of approximately $3,142,500 from an escrow account under his control to a bank account for the benefit of Xybernaut. In exchange for this investment, John Doe #1 and John Doe #2 agreed to issue 3,774,806 Xybernaut shares and a total of 3,774,806 Xybernaut warrants to SALTSMAN and Investor #1 on behalf of Xybernaut.

12. On or about December 23, 2004, Xybernaut issued a press release announcing the investment of $8.5 million. The press release disclosed that the investors would receive a total of 9,167,386 shares of Xybernaut common stock at a price representing an approximate 20% discount to the average closing price for Xybernaut's stock during the ten days prior to December 7, 2004. The press release was misleading because it failed to disclose the additional 3.5% Discount that the defendant ZEV SALTSMAN and Investor #1 received in connection with the investment.

13. On or about December 30, 2004, Xybernaut filed a registration statement with the SEC seeking to register the

resale of the common stock issued in connection with the investment by the defendant ZEV SALTSMAN and Investor #1. John Doe #1 and John Doe #2 signed the registration statement on behalf of Xybernaut. SALTSMAN knew that Xybernaut intended to file the registration statement and that the registration would conceal the fact that SALTSMAN and Investor #1 received the additional 3.5% Discount in connection with the $8.5 million investment.

14. The registration statement falsely stated that the natural persons holding voting or dispositive control over the shares owned by Western Ventures Ltd. and Polar Properties Ltd. were Amit Lederman and Mary Lowenthal, respectively. In fact, the natural persons with voting and dispositive control over Western Ventures Ltd. and Polar Properties Ltd. were the defendant ZEV SALTSMAN and Investor #1. SALTSMAN knew that the registration statement contained this false statement, which concealed that he was a person who had voting or dispositive control over the shares issued in connection with the $8.5 million investment.

15. On or about January 12, 2005, the SEC declared the registration statement effective. As a result, the defendant ZEV SALTSMAN and Investor #1 were able to sell without restriction the Xybernaut shares issued in connection with the $8.5 million investment. On or about and between January 21, 2005 and April

6

8, 2005, both dates being approximate and inclusive, SALTSMAN and Investor #1 received the common stock from Xybernaut in connection with their $8.5 million investment. The common stock was deposited into a brokerage account at a brokerage firm located in Brooklyn, New York.

### SECURITIES FRAUD

16. The allegations contained in paragraphs 1 through 15 are realleged and incorporated as though fully set forth in this paragraph.

17. In or about and between November 2004 and April 2005, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ZEV SALTSMAN, together with others, did knowingly and willfully use and employ manipulative and deceptive devices and contrivances, contrary to Rule 10b-5 of the Rules and Regulations of the SEC (Title 17, Code of Federal Regulations, Section 240.10b-5), by (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in light of the circumstances in which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which would and did operate as a fraud and deceit upon Xybernaut, in connection with the purchase and sale of Xybernaut

7

common stock and warrants, directly and indirectly, by use of the means and instrumentalities of interstate commerce and the mails.

(Title 15, United States Code, Sections 78j(b) and 78ff; Title 18, United States Code, Sections 2 and 3551 et seq.)

## FORFEITURE ALLEGATION

18. The United States hereby gives notice to the defendant that, upon his conviction of the offense charged in this Superseding Information, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), of any property constituting or derived from proceeds obtained directly or indirectly as a result of such offense, including but not limited to the following:

## MONEY JUDGMENT

A sum of money representing the amount of proceeds obtained as a result of the offense.

## SPECIFIC PROPERTY

a. Bank Hapoalim (Switzerland) Ltd., Luxembourg Branch, account number 0272590, held in the name of Carmen Limited;

b. Bank Hapoalim (Switzerland) Ltd., Luxembourg Branch, account number 0345950, held in the name of Zev and Judy Saltsman; and

8

c.   EFG Private Bank Limited, London, United Kingdom, account number 615330, held in the name of Carmen Limited.

19.   If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(a)   cannot be located upon the exercise of due diligence;

(b)   has been transferred or sold to, or deposited with, a third party;

(c)   has been placed beyond the jurisdiction of the court;

(d)   has been substantially diminished in value; or

(e)   has been commingled with other property which cannot be divided without difficulty; it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of such defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853; Title 28, United States Code, Section 2461(c))

_____
BENTON J. CAMPBELL
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK